UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLUB ONE CASINO, INC., CLUB ONE ACQUISITION CORP., <br><br> Plaintiffs, <br><br> v. <br><br> SARANTOS, *et al.*, <br><br> Defendants. | No. 1:17-cv-00818-DAD-SAB <br><br> <u>ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND DENYING AS MOOT DEFENDANT JOHN CARDOT'S MOTION TO DISQUALIFY</u> <br><br> (Doc. Nos. 35, 36, 37, 38) |

This matter is before the court on three motions to dismiss brought on behalf of defendants John Cardot (Doc. No. 35); Dusten Perry, Louis Sarantos, and Shawn Sarantos (Doc. No. 37); and Joseph F. Capps (Doc. No. 38), as well as defendant John Cardot's motion to disqualify plaintiffs' counsel (Doc. No. 36). After briefing on the motions was completed, a hearing on the motions was held on March 6, 2018. Attorneys Steven McGee and Stephanie Borchers appeared for plaintiffs Club One Casino, Inc. and Club One Acquisition Corporation ("plaintiffs" or "Club One"). Attorneys James Betts and Olga Savage appeared in person and James Wilkins appeared telephonically for defendants. (Doc. No. 49.)

Having reviewed the parties' briefing and heard arguments, and for the reasons that follow, defendants' motions to dismiss will be granted, and defendant John Cardot's motion to

/////

disqualify will be denied as moot.[1]

**BACKGROUND**

On August 26, 2015, plaintiffs commenced this action in the Fresno County Superior Court. (*See* Doc. No. 1-2 at 2.) On June 19, 2017, the case was removed to federal court pursuant to 28 U.S.C. § 1441. (*See* Doc. No. 1.)

The action now proceeds on plaintiffs' second amended complaint ("SAC"), which was filed on June 5, 2017. (Doc. No. 1-4.) In the SAC, plaintiffs bring claims against Louis Sarantos ("L. Sarantos"), d/b/a Clovis 500 Club and 500 Club Casino, Dusten Perry, John Cardot, Shawn Sarantos ("S. Sarantos"), Joseph Capps, Lodi Francesconi, and Doe defendants.[2] (*Id.*)

The SAC alleges in relevant part as follows. Plaintiffs are a licensed gambling establishment in Fresno, California. (*Id.* at 3.) Defendants L. Sarantos, Perry, Cardot, S. Sarantos, and Capps (collectively, the "defendants") financed, operated, managed, and controlled the 500 Club, which constituted an illegal gambling business. (*Id.* at 6.) According to plaintiffs, the defendants failed to disclose to the California Gambling Control Commission ("CGCC") and the Department of Justice, Bureau of Gambling Control ("DOJ"), material information regarding a construction loan for the 500 Club. (*Id.* at ¶¶ 32–49.) Defendants also purposefully withheld required information from the CGCC and the DOJ to avoid a lengthy licensing process that would have impeded their ability to expand their gambling establishment. (*Id.* at ¶¶ 20–22, 42, 60–61.) Defendants funded their gambling operations from illegal sources of money, skimmed and embezzled funds, committed tax evasion and money laundering, avoided Title 31 disclosure requirements, and allowed S. Sarantos to manage the cardroom without proper licensing. (*Id.* at ¶¶ 12, 19, 50–55.) Additionally, the funding and loans for the 500 Club were obtained from numerous individuals, including defendants, without the making of the proper disclosures to or

---

[1] At the hearing on the pending motions, the court indicated that it would defer resolution on the motion to disqualify plaintiff's counsel (Doc. No. 36) until after its ruling on the motions to dismiss. (*See* Doc. No. 49.) By this order, the court grants the motions to dismiss without leave to amend and remands this action to state court. Because any motion to disqualify should therefore now be determined by the state court, it has been rendered moot as to this court.

[2] Defendant Francesconi was terminated from this action on November 13, 2017. (Doc. No. 31.)

2

obtaining proper approval from the CGCC, the DOJ, or the City of Clovis. (*Id.* at ¶¶ 27–49.) According to plaintiffs, as a result, defendants rapidly expanded their gambling business and tripled its size without undergoing the appropriate scrutiny of the licensing process, and without experiencing the delay attendant to such scrutiny. (*Id.* at ¶¶ 49, 53, 88, 97, 105, 112.) Plaintiffs claim that they have incurred significant financial harm due to the alleged illegal expansion of defendants' gambling business. (*Id.* at ¶¶ 88–90, 97–99, 105–107, 112–114.)

The SAC describes plaintiffs' claims against defendants as follows: 1) Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(b) and (c); 2) 18 U.S.C. §§ 1962(b) and (c) for the collection of unlawful debt; 3) 18 U.S.C. §§ 1962(b) and (c) for monetary transactions in property derived from unlawful activity; 4) 18 U.S.C. §§ 1962(d) for conspiracy;[3] 5) unfair business competition claims under California Business & Professions Code § 17200 *et seq.*; 6) conspiracy, aiding and abetting, and furnishing the means for violation of unfair business competition under California Business & Professions Code § 17200 *et seq.*; 7) receipt of stolen property in violation of California Penal Code § 496(a); 8) inducing breach of non-competition agreement; 9) conspiracy to induce breach of non-competition agreement; 10) establishment of a constructive trust; and 11) unjust enrichment. (*Id.* at 30–56.)

## LEGAL STANDARDS

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[3] Plaintiff's claims 1 through 4 are all brought pursuant to provisions of 18 U.S.C. § 1962 and will hereafter be referred to collectively as plaintiffs' "civil RICO claims."

3

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. *See also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

**DISCUSSION**

**A.    Standing**

As a preliminary matter, the undersigned must determine whether plaintiffs have statutory standing to bring a civil RICO claim under 18 U.S.C. § 1964(c). Under RICO's civil enforcement mechanism, "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962] may sue therefore in any appropriate United States district court." 18 U.S.C. § 1964(c). To have standing under § 1964(c), a plaintiff must show: (i) "that his alleged harm qualifies as injury to his business or property;" and (ii) "that his harm was 'by reason of' the RICO violation . . . ." *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008).

Injury to business or property requires tangible and concrete financial loss, rather than speculative or uncertain harm. *Guerrero v. Gates*, 357 F.3d 911, 920 (9th Cir. 2004); *Steele v. Hosp. Corp. of Am.*, 36 F.3d 69, 71 (9th Cir. 1994); *Oscar v. Univ. Students Coop. Assoc.*, 964 F.2d 783, 788 (9th Cir. 1992). "To have standing under civil RICO, [a plaintiff] is required to

4

show that the racketeering activity was both a but-for cause and a proximate cause of his injury." *Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866, 873 (9th Cir. 2010). Meanwhile, reliance "on an attenuated chain of conjecture" is insufficient to support proximate causation under § 1964(c). *Salmon Spawning & Recovery Alliance v. Gutierrez*, 545 F.3d 1220, 1228 (9th Cir. 2008) (citation omitted).[4]

Proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992). "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006). Three non-exhaustive factors to be considered in determining whether the RICO proximate causation requirement has been met include:

> (1) whether there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general; (2) whether it will be difficult to ascertain the amount of the plaintiff's damages attributable to defendant's wrongful conduct; and (3) whether the courts will have to adopt complicated rules apportioning damages to obviate the risk of multiple recoveries.

*Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1148 (9th Cir. 2008) (*citing Holmes*, 503 U.S. at 269–70); *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1169 (9th Cir. 2002) (quoting *Ass'n of Wash. Pub. Hosp. Districts v. Philip Morris Inc.*, 241 F.3d 696, 701 (9th Cir. 2001)).

A series of Supreme Court cases illustrate the contours of establishing standing for a civil RICO claim. In *Holmes*, 503 U.S. at 268–69, the Supreme Court assessed whether the Securities Investor Protection Corporation (SIPC) adequately alleged causation in a civil RICO claim brought against defendants involved in the manipulation of stock prices. *Id.* at 261–63. SIPC claimed that due to defendants' manipulation, stock prices plummeted and resulted in the demise of two broker-dealers, causing SIPC to advance nearly $13 million through the course of insuring losses for customers of the broker-dealers. *Id.* at 263. The Supreme Court held that the link

---
[4] Plaintiffs with standing may seek treble damages, costs, and attorney's fees under the civil RICO statute. *See* 18 U.S.C. § 1962(c). However, private parties cannot pursue injunctive relief under RICO. *See Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076, 1088 (9th Cir. 1986) (observing that "no private equitable action" is permitted under RICO).

between the SIPC's injury and the alleged stock manipulation was too attenuated for SIPC to recover in a civil RICO action. *Id.* at 271.

Similarly, in *Anza*, the Supreme Court again found that a theory of causation was too indirect to state a claim. 547 U.S. at 460–461. In that case, Ideal Steel Supply brought a civil RICO claim against National Steel Supply, alleging that National had engaged in a fraudulent scheme to improperly gain market share and sales at its expense. *Id.* at 454. Ideal alleged that National adopted a practice of not charging the required New York sales tax, thus permitting National to reduce its prices while maintaining the same profit margin as before the price cut. *Id.* The Supreme Court rejected Ideal's RICO claim due to insufficient causation and found that "[t]he direct victim of this conduct was the State of New York, not Ideal." *Id.* at 458. Additionally, the Supreme Court stated that there were "any number of reasons unconnected to the asserted pattern of fraud" that could have led National to reduce its prices, thus undermining the directness of the causal relationship. *Id.* at 458–59.

Finally, in *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 8 (2010), the Supreme Court again found that causation was too attenuated to state a civil RICO claim. There, the City of New York had the authority to collect a $1.50 tax on each pack of cigarettes, which in-state sellers directly charged to consumers. *Id.* at 6. However, the City was responsible for recovering the tax directly from consumers who purchased cigarettes from out-of-state vendors. *Id.* The City alleged that Hemi Group, a New Mexico company that sold cigarettes online, had committed fraud by failing to submit required customer information to the State of New York. *Id.* at 9. The State was, therefore, unable to submit the missing information to the City, preventing the City from pursuing customers who had failed to pay the tax. *Id.* Accordingly, the City alleged that it suffered an injury in the amount of back taxes that it was unable to collect from consumers. *Id.* The Supreme Court found that the City's theory of causation was "far too indirect" to establish proximate cause as required to state a civil RICO claim. *Id.*

Here, plaintiffs allege that defendants have engaged in racketeering by financing, managing, and operating an illegal gambling business, including engaging in mail and wire fraud. (*See e.g.*, Doc. No. 41 at 16.) Plaintiffs argue that Club One suffered losses due to defendants'

predicate acts, which permitted defendants to operate the 500 Club in a way that illegally competed with plaintiffs, thus causing direct injuries to plaintiffs. (Doc. Nos. 40 at 11–13; 10–12; 41 at 14; 42 at 9–13.) Additionally, plaintiffs argue that they will be able to present expert testimony measuring the losses suffered by Club One because of defendants' allegedly illegal expansion and relocation. (*See, e.g.*, Doc. No. 41 at 15–16.) Finally, plaintiffs argue that there is no risk of multiple recoveries here, and thus, this court will not be required to apply complicated apportionment rules. (*See, e.g.*, Doc. No. 40 at 14.)

Defendants move to dismiss, arguing that plaintiffs are unable to establish their standing to bring a civil RICO action. (Doc. Nos. 35, 37, 38.) Defendants argue that the harms plaintiffs allegedly suffered, such as decreased revenues and lost market share, are too far removed from the alleged predicate acts. (*See* Doc. Nos. 35-1 at 11; 38-1 at 12–16; 37-1 at 12–16.)

At bottom, plaintiffs' civil RICO claim is based upon their contention that because of defendants alleged misconduct, plaintiffs lost market share in the area in which the two compete. The Supreme Court has expressed skepticism that standing to bring a civil RICO action can be conferred through an alleged loss of market share. In this regard, the court has stated:

> There is, in addition, a second discontinuity between the RICO violation and the asserted injury. Ideal's lost sales could have resulted from factors other than petitioners' alleged acts of fraud. Businesses lose and gain customers for many reasons, and it would require a complex assessment to establish what portion of Ideal's lost sales were the product of National's decreased prices.

*Anza*, 547 U.S. at 459 (2006). Likewise, the Ninth Circuit and district courts within this circuit have indicated that plaintiffs pursuing civil RICO claims based on alleged decreases in profit lack statutory standing because such theories of recovery are too speculative to allow ascertainment of their claimed damages. *See Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1148–49 (9th Cir. 2008) (affirming the district court's dismissal of civil RICO claims and finding the plaintiff could "not overcome the proximate causation hurdle" because "the court would have to engage in a speculative and complicated analysis to determine what percentage of Sybersound's decreased sales, if any, were attributable to the Corporation Defendants' decision to lower their prices or a Customer's preference for a competitor's products over Sybersound's, instead of to

7

acts of copyright infringement or mail and wire fraud."); *Harmoni Int'l Spice, Inc. v. Wenxuan Bai*, No. CV 16-00614-BRO (ASx), 2016 WL 6571272, at *14 (C.D. Cal. Aug. 5, 2016) (dismissing plaintiffs' civil RICO claim because the connection between plaintiffs' alleged harm of lost sales and profits purportedly caused by defendants' fraudulent submissions was too attenuated to satisfy the proximate causation requirement); *Los Angeles Turf Club, Inc. v. Horse Racing Labs*, LLC, No. CV 15-09332 SJO (JEMx), 2016 WL 6823493, at *4 (C.D. Cal. May 2, 2016) (dismissing plaintiffs' civil RICO claim, observing "Plaintiffs allege monetary losses because customers are placing bets with [defendants] rather than with Plaintiffs. Plaintiffs, however, fail to account for the other reasons why customers may place wagers somewhere other than at a race track.").

      Just as in the cases cited above, plaintiffs here cannot adequately allege a causal theory that defendants' actions are the cause-in-fact of their alleged injuries. Here, numerous other factors, aside from defendants' alleged actions, could have led to plaintiffs' decline in business, such as the demand for table games in Fresno, a change in the local economy, or the manner in which plaintiffs operated their business. Plaintiffs argue that Club One was damaged by the mere existence of defendants' alleged illegal gambling business and contend that they are not relying "solely on allegations of loss of market share." (Doc. No. 42 at 11–12.) Whatever the label placed on their theory, however, plaintiffs have not alleged any theory on which defendants' allegedly unlawful gambling business would cause injury to plaintiffs unless it had the effect of competing with plaintiffs for customers.

      Plaintiffs argue that proximate cause is properly alleged, drawing comparisons between this case and those of *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 649 (2008) and *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1171 (9th Cir. 2002). In *Bridge*, respondents were permitted to bring suit against petitioners, who allegedly defrauded the Cook County Treasurer's Office at an annual public auction to bid on a limited number of tax liens acquired on delinquent taxpayers' properties. 553 U.S. at 642–647. There, the Supreme Court held that by fraudulently submitting affidavits indicating compliance with the county's rules, petitioners caused respondents to lose liens that they otherwise would have been awarded, thus serving as the direct

cause of respondents' injuries. *Id.* at 649. In *Mendoza*, the Ninth Circuit concluded that agricultural laborers had standing to sue two growers who allegedly engaged in a scheme to hire undocumented immigrants, resulting in depressed wages in the area for laborers. 301 F.3d at 1166–1168. The court does not find the comparisons drawn by plaintiffs between those cases and this one to be persuasive.

Both *Bridge* and *Mendoza* involved essentially closed universes in which plaintiffs' alleged injuries were logically and directly attributable to defendants' actions. In *Bridge*, the county had a limited number of tax liens to auction, and each time a fraud-induced bid was awarded, a legitimate bidder was necessarily passed over.[5] *Bridge,* 553 U.S. at 642–645. Similarly, in *Mendoza*, the laborers "allege[d] that the growers singularly have the ability to define wages in this labor market, akin to monopsony or oligopsony power."[6] *Mendoza*, 301 F.3d at 1170. The court in *Mendoza* found that, taking the allegations of the complaint as true, it could not find more direct victims of the defendants' illegal conduct than the documented employees who were complaining in the action of depressed wages. *Id.* Here, plaintiffs attempt to argue that due to the nature of the local market, defendants' allegedly illegal gambling operation served as Club One's sole competitor (*see* Doc. No. 41 at 17), but ignore the many other variables obviously at play in affecting the demand for table games. Further, plaintiffs allege that defendants failed to disclose third-party interests, with the intent to deceive state and local

/////

/////

/////

---

[5] The holding in *Bridge* was limited to a RICO claim based solely on mail fraud. 553 U.S. at 661 (2008). In contrast, plaintiffs in this case also allege the predicate act of financing, managing, and operating an illegal gambling enterprise. (*See e.g.*, Doc. No. 41 at 16.)

[6] Additionally, *Mendoza* was decided under more lenient pleading standards than those applied by courts today. *See Walters v. McMahen*, 684 F.3d 435, 442 (4th Cir. 2012) ("However, at the time *Mendoza* was decided, the dismissal of a complaint was appropriate only if it was 'clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' As the decisions in *Twombly* and *Iqbal* have made clear, the pleading standard employed in *Mendoza* no longer is applicable.")

9

authorities. (*See* Doc. 1-4 at 34, ¶ 86.)[7] This case much more closely resembles *Anza,* in which the Supreme Court found that the relationship between a company's actions in defrauding the state and their ability to offer lower prices was not direct enough to establish standing, even though the two parties were principal competitors in a market. 547 U.S. at 458.

Here, as in *Hemi*, the conduct that appears to be directly responsible for plaintiffs' harm is distinct from the conduct constituting the fraud alleged by plaintiffs. In *Hemi*, the Supreme Court found that the City's claim was deficient because it alleged that "the conduct directly responsible for the City's harm was the customers' failure to pay their taxes. And the conduct constituting the alleged fraud was Hemi's failure to file Jenkins Act reports." 559 U.S. at 11. At the most basic level, plaintiffs' alleged injuries are caused by a decrease in the number of people who frequent their casino, which can be readily attributed to several factors unrelated to defendants' alleged actions. Thus, plaintiffs' claimed injury is distinct from the conduct constituting the alleged fraud, which are acts taken in furtherance of the operation of an illegal gambling business. *See Anza*, 547 U.S. at 461 (2006) ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries.").

Further, ongoing administrative actions indicate that other parties besides plaintiffs were the direct victim of defendants' actions. "The requirement of a direct causal connection is especially warranted where the immediate victims of an alleged RICO violation can be expected to vindicate the laws by pursuing their own claims." *Anza*, 547 U.S. at 460. Here, the California Gaming Control Commission and the State of California, through its Department of Justice Bureau of Gaming Control, are the direct victims of defendants' alleged actions in operating an illegal gambling operation and can be expected to pursue recourse under the law. Indeed, plaintiffs allege that defendants failed to disclose transactions with the intent to deceive State and

---

[7] Plaintiffs also allege that defendants deceived State and local authorities "with the specific intent to avoid the delay of disclosure and to operate with an unfair advantage over the 500 Club Enterprise's competitors." (Doc. No. 1-4 at 34, ¶ 86.) Plaintiffs' allegations, however, further accentuate that the alleged impact to plaintiffs is attenuated and at most, is a residual effect from the impact on State and local authorities.

10

local authorities and have been under government investigation for the actions alleged in the complaint. (SAC at ¶¶ 62, 86.)[8]  Because plaintiffs are not a direct victim of defendants' alleged fraud, other parties are better situated to pursue these claims. *See Anza*, 547 U.S. at 460 (2006) ("[W]hile it may be difficult to determine facts such as the number of sales Ideal lost due to National's tax practices, it is considerably easier to make the initial calculation of how much tax revenue the Anzas withheld from the State. There is no need to broaden the universe of actionable harms to permit RICO suits by parties who have been injured only indirectly."); *Rezner*, 630 F.3d at 874 (reversing the district court's grant of summary judgment in favor of the plaintiff on his civil RICO claim due to a lack of proximate causation and stating: "Here, the United States, not Rezner, was the immediate victim of HVB's fraud and better situated to sue HVB."); *Sybersound*, 517 F.3d at 1149 (stating that the copyright holders were more direct victims of the defendants' alleged infringement actions and could be expected to pursue their own claims).

Even if factual proximate causation were satisfied here, it would be immensely difficult for the court to account for what portion of Club One's decreased sales resulted from each individual defendant's alleged misconduct. Plaintiffs advance different allegations regarding the actions of each of the five defendants. Apportionment would require evaluating the relative causal role of actions such as defendants' alleged failure to receive proper authorization, unlicensed management, and unlawful debt collection. *See Anza*, 547 U.S. at 460 (2006) ("The element of proximate causation recognized in *Holmes* is meant to prevent these types of intricate, uncertain inquiries from overrunning RICO litigation.").

For all these reasons, the court will grant defendants' motions to dismiss causes of action one through four brought pursuant to 18 U.S.C. §§ 1962(b)–(d).

/////

/////

---

[8] Plaintiffs' SAC alleges that "[o]n or about August 12, 2015, the Bureau [of Gaming Control], by and through the California Attorney General, filed an Accusation before the CGCC . . . based on the same or similar facts, circumstances and financial dealings set forth above and herein.").

**B.     Leave to Amend**

Next, the court addresses plaintiffs' request for leave to amend the complaint. (*See, e.g.*, Doc. No. 41 at 21.)  The Federal Rules of Civil Procedure provide that "[t]he court should freely give leave [to amend the pleadings] when justice so requires." Fed. R. Civ. P. 15(a)(2). Nevertheless, leave to amend need not be granted when the amendment:  (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile.  *See AmerisourceBergen Corp. v. Dialysist W. Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (citing *Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999)).  Amendment is therefore proper "if the deficiencies can be cured with additional allegations that are 'consistent with the challenged pleading' and that do not contradict the allegations in the original complaint.'" *United States v. Corinthian Colls.*, 655 F.3d 984, 955 (9th Cir. 2011) (citing *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990)).

Given the analysis set forth above, the court is persuaded that the granting of further leave to amend would be futile here.  Plaintiffs' SAC, spanning fifty-seven pages, does not lack for detail. (*See* Doc. No. 1-4.)  However, plaintiffs' SAC relies on an attenuated theory of causation in which they cannot claim that they suffered direct injuries stemming from defendants' alleged engagement in the predicate acts.  At the hearing on the pending motion, plaintiffs merely proposed amending their complaint to add more predicate acts.  However, such allegations could not create a more direct causal relationship between plaintiffs' claimed injury and the alleged conducting of a gambling enterprise operated in violation of the law by defendants.  The deficiencies identified by the court above lie with the crux of plaintiffs' theory of causation, which cannot be remedied with a more detailed complaint. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend.").  For this reason, the court will not grant plaintiffs leave to amend.

**C.     Supplemental Jurisdiction**

Where a district court has original jurisdiction over some of the claims in an action, it generally has supplemental jurisdiction over state law claims "that are so related . . . that they form part of the same case or controversy under Article III of the United States Constitution." 28

U.S.C. § 1367(a). Notwithstanding this provision, however, courts may decline to exercise supplemental jurisdiction over a claim if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." *Id.* at § 1367(c). Here, plaintiffs' remaining causes of action are all brought under state law.[9] Having dismissed the claims over which this court has original jurisdiction, the court declines to exercise supplemental jurisdiction over plaintiffs' state law claims. This action will therefore be remanded to the Fresno County Superior Court.

## CONCLUSION

Accordingly,

1. Defendants' motions to dismiss (Doc. Nos. 35, 37, 38) are granted in part;
2. Counts One through Four of the SAC are dismissed with prejudice as to all defendants;
3. The court declines to exercise supplemental jurisdiction, and all other counts are remanded back to Fresno County Superior Court;
4. Defendant John Cardot's motion to disqualify plaintiffs' counsel (Doc. No. 36) is denied as moot;
5. All currently scheduled dates for further proceedings in this action are vacated; and
6. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **September 28, 2018**

UNITED STATES DISTRICT JUDGE

---

[9] As noted at the outset, the action was originally filed in the Fresno County Superior Court and removed to this federal court.

13